# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2009

Charles R. Fulbruge III
Clerk

No. 08-31234
Summary Calendar

CYRUS PROVOST

Plaintiff-Appellant

v.

JOSEPH NISSEN, Individually and in his capacity as an officer for the City
of New Iberia; BRETT BROUSSARD, Individually and in his capacity as a
deputy for Iberia Parish Sheriff's Office; SCOTT CLOSTIO, Individually and
in his capacity as a Sergeant for the City of New Iberia; JEFF MATTHEWS,
Individually and in his capacity as a detective for Iberia Parish Sheriff's
Office; DARREN BOURQUE, Individually and in his capacity as a captain for
Iberia Parish Sheriff's Office; SHERIFFS OFFICE IBERIA PARISH; SID
HEBERT, Individually and in his official capacity as Sheriff of Iberia Parish

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:07-CV-1014

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Plaintiff-Appellant Cyrus Provost appeals the district court's grant of summary judgment in favor of the Defendants on the basis of qualified immunity. Provost also argues that the district court abused its discretion in denying his motion to continue the summary judgment hearing under FED. R. CIV. P. 56(f). We affirm.

This action arises from a broken arm suffered by Provost during the course of an arrest. Provost was at a park when his teenage son got into an altercation with other teens. Provost went to his car and returned with a gun, which he proceeded to fire into the air three times before leaving the scene. The police were called, and shortly after they arrived, Provost returned to the scene. Several witnesses identified him as the shooter and warned that he might be armed. The police drew their weapons and ordered Provost to put his hands up and then to lie down. Before he lay down, the police brought him to the ground. After a brief struggle, they managed to handcuff Provost. Several members of Provost's family were agitated by the arrest and began approaching the officers. The officers subdued them by spraying mace toward the crowd. The officers then placed Provost on some bleachers, where he was ordered to sit. While on the bleachers he continued to berate the officers, shouting various obscenities. Provost was then taken to a patrol unit. He refused to get in and was forced into the back of the unit.

After Provost was placed in the patrol unit, the officers spoke with several witnesses. They found three brass casings on the ground near where the witness had indicated that Provost fired the weapon. They obtained three witness statements identifying Provost as the shooter.

During the investigation, Provost complained of pain in his left arm. It is unclear whether he refused treatment or the officers refused to allow him to be treated while at the scene. In either case, Provost was transported to the Criminal Investigation Department, where he continued to complain of pain in

his left arm. The detective with whom he was speaking called for an ambulance and Provost was transported to Iberia Medical Center, where it was discovered that he had a broken bone in his left forearm. After Provost was treated, he was transported to Iberia Parish Jail and booked on charges of illegal use of a weapon, possession of a firearm in a firearm-free zone, possession of a firearm by a convicted felon, and resisting an officer with violence. He ultimately pled guilty to illegally discharging a firearm.

On June 13, 2007, Provost brought this suit alleging, *inter alia*, that the Defendants used unreasonable force in effecting the arrest, thereby breaking his arm. On August 29, 2008, a few weeks after the discovery deadline had passed, the Defendants filed a motion for summary judgment asserting that they were entitled to qualified immunity because Provost was resisting arrest when the injury occurred. The motion was supported by an affidavit from one of the arresting officers indicating that Provost was in fact resisting arrest. Although he sought to extend the deadline for filing opposition and to offer several documents once the deadline had passed, Provost never properly filed any opposition to the Defendants' motion for summary judgment. The district court eventually granted the motion for summary judgment, noting that no opposition had been filed. Provost asserts that the district court erred in denying his motion for enlargement of time for filing opposition and in granting summary judgment for the Defendants.

For the purposes of this appeal, we treat Provost's September 17 motion for enlargement of time as an application for relief under FED. R. CIV. P. 56(f). Rule 56(f) motions are generally favored and should be liberally granted. *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999). That being said, a district court has broad discretion in deciding whether to grant a continuance under the rule. *Id.* "Such discretion will not be disturbed

ordinarily unless there are unusual circumstances showing a clear abuse." *Beattie v. Madison County School District*, 254 F.3d 595, 606 (5th Cir. 2001).

To prevail on a Rule 56(f) motion, a party must show (1) why he needs additional discovery, and (2) how that discovery will create a genuine issue of material fact. *Stearns*, 170 F.3d at 535 (citing *Krim v. Banc Texas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). In this case, the Defendants concede that a simple affidavit from Provost, or one of his family members who was present during the incident, stating that Provost was cooperating fully with the officers would have raised a genuine issue of material fact as to whether he was resisting arrest. Because the ability to produce this information was entirely within Provost's control, he cannot show why he needed additional discovery to oppose the motion for summary judgment. Accordingly, we find that the district court did not abuse its discretion in denying Provost's Rule 56(f) motion.

Provost argues that even if the district court were correct in deciding that he should not be given extra time for filing an opposition, the grant of summary judgment based on qualified immunity was nonetheless in error. We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001).

The test for qualified immunity is whether the officers' actions were objectively reasonable in light of clearly established law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987). This issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officers' force was objectively reasonable under the circumstances. *See Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008). Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake. *See Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989).

The nature and quality of the intrusion is undisputed: Provost suffered a broken left wrist. Evaluating the governmental interest requires us to consider various factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* In this case, all three factors indicate a strong governmental interest in subduing Provost. The crime at issue involved a firearm being discharged. Because the officers knew that a gun was involved in the incident and that shots had been fired, they reasonably believed that Provost posed an immediate threat to their safety and the safety of others. According to the unopposed affidavit of Deputy Nissen, Provost was loudly and violently resisting arrest throughout the encounter. Moreover, there were many bystanders who had just been involved in a fight and Provost's family was approaching the officers, creating a potentially explosive situation. We must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* We must judge their action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 397. Taking the facts in the light most favorable to Provost, he had recently been involved in an altercation involving gunfire and his family was aggressively approaching the officers during the arrest. Under these circumstances, we hold that the officers' actions were reasonable as a matter of law and that the district court was correct to grant summary judgment.

The judgment of the district court is AFFIRMED.